### TOLEDO (CITY) v. HERMAN BUECHELE.

1. EXACTION OF FEES FOR PERMITS UNLAWFUL AFTER OCCUPATION IS LICENSED.

Where a city, upon the payment of an annual fee of ten dollars, has issued a license to a person authorizing him to carry on the occupation of privy vault cleaner in such city, for the period of one year, and where such city requires him to obtain a permit from the board of health before cleaning a privy vault, it is unreasonable and unlawful for such board of health to exact the payment of a fee of twenty-five cents or fifty cents for the issuing of such permit.

2. SUCH FEES MAY BE RECOVERED UNDER GENERAL PROTEST.

The payment of such fees is involuntary, and the same may be recovered back, where the party objects and protests generally against such exaction and is threatened at different times by the president of the board of health with arrest and revocation of his license unless he pays for the permits; and it is not necessary, to make such payments involuntary, that objection and protest be made before the payment of each fee.

3. ACTION NOT BARRED IN ONE YEAR.

While the exaction of such fees by the board of health is an exercise of power in the nature of taxation, the cause of action is not governed by sec. 5848, Rev. Stat., which is the statute of limitations relating to the recovery of illegal taxes and assessments; that statute relates to taxes and assessments levied by the authorities in the ordinary way, and not to such an unlawful exaction of fees.

ERROR to the Court of Common Pleas of Lucas county.

HULL, J.

This is an action brought by the plaintiff below, Herman Buechele, to recover from the city of Toledo, $489.25, which he claims was illegally exacted from him as charges for permits to carry on his occupation as privy vault cleaner, in the city of Toledo. The case was tried and submitted to the court without a jury and a judgment rendered in favor of the plaintiff below for the full amount of his claim, and the city of Toledo prosecutes error in this court to reverse that judgment.

It was agreed upon the trial below, that during the period in question, to-wit, from August 1, 1892, to September 30, 1895, the plaintiff paid the city from August 1, 1892, until July 23, 1894, for 655 permits, at 25 cents each, the sum of $163.75; and from July 23, 1894, to September 30, 1895, for 631 permits, at 50 cents each, the sum of $315.50, making in all $489.25.

The plaintiff below claimed that the exaction of these sums for permits, after a license had been issued to him to carry on his occupation,

was unlawful, was an attempted exercise of the power of taxation, which had not been conferred upon the city, and was in fact an unlawful exaction from him of these various sums.

The plaintiff in error, the defendant below, claims: First, that the exaction of these fees for permits, under the resolution of the board of health, was lawful. It claims, further, that the payment, in any event, to the city, by the defendant in error, was voluntary on his part and that, therefore, they cannot be recovered back. Counsel for the city insists, further, that if these fees were a tax, that the claim of the plaintiff below is barred by the statute of limitations governing the recovery of illegal taxes, the limitation under the statute being one year.

The city, of course, has such powers only as are conferred upon it by law, as has been distinctly held in Ravenna v. Pennsylvania Co., 45 Ohio St., 118, where the Supreme Court say, in the syllabus:

"Municipal corporations, in their public capacity, possess such powers, and such only, as are expressly granted by statute, and such as may be implied as essential to carry into effect those which are expressly granted."

Section 89 of the revised ordinances of the city of Toledo provides:

"Any person or persons desirous of engaging in said business of privy vault cleaning shall take out a license from the mayor, to be issued on the recommendation of the board of health, and give a bond in the sum of two hundred dollars, conditioned for the proper performance of their work, and pay into the treasury, annually, for such license, the sum of five dollars, and in addition to the license, the board of health shall issue a permit to any person or persons so licensed, for each and every privy vault, or other receptacle of night soil, necessary or desired to be cleaned, before the contents thereof are removed.   *   *   *   "

This ordinance was afterwards amended so as to make the license fee ten dollars instead of five dollars.

Under the general power conferred upon cities to regulate water closets, sec. 1692, Rev. Stat., sub. 22, there may be some question whether the city, at the time this ordinance was passed, had the power to impose a license fee; but in 1893, 90 L. L., 335, this power was expressly conferred upon the city of Toledo, providing that in a city of the class to which Toledo belonged it might be provided by ordinance for licensing persons for certain occupations, and among others the emptying or cleaning or removing the contents of privy vaults or catch basins, for hire.

Now, by virtue of this ordinance which I have read, the city of Toledo issued to this plaintiff annually a license, which, for the year commencing April 3, 1894, was in the words as follows:

"License. City Auditor's Office. Toledo, Ohio, April 3, 1894. Received of Herman Buechele, doing business at South Wayne, the sum of ten and 00-100 dollars, in consideration of which said Herman Buechele is hereby licensed and authorized to clean vaults in the city of Toledo, Ohio, to the close of March 1, 1895. Jas. S. Pheatt, city auditor.

The form was the same for each year, except the date.

After issuing him this license, which authorized him to clean vaults for a year, he was afterwards required, by the president of the board of health, upon his application for a permit, to pay, during the first part of this period, the sum of twenty-five cents for each vault

cleaned, and, during the latter part of the time in question, as I have stated, fifty cents for each vault, amounting in all, during the period of about three years, to nearly five hundred dollars. These payments were required under a resolution which was passed by the board of health. At the time this ordinance, sec. 89 was passed, sec. 84 of the revised ordinances provided as follows:

"No person shall remove the contents of any privy vault, except by written permission had of the board of health."

Afterwards, on June 6, 1892, that resolution was amended by the board of health, so as to read as follows:

"No person shall remove the contents of any privy vault, except by written permission had of the board of health for which permit a fee of twenty-five cents shall be paid by the applicant and the money so received shall in each instance be expended, under direction of the board of health, in disinfecting the premises for which said permit was given."

Afterwards, on July 20, 1894, the board of health took this action:

"Mr. Bartlett moved that hereafter the health department charge fifty cents for all vault cleaning permits. Carried."

Pursuant to these resolutions, the president of the board of health demanded and required of the plaintiff, as a prerequisite to his carrying on his occupation under the license which had been granted to him, the payment of these sums of money, for the recovery of which this action was brought. The court of common pleas held that the exacting of these sums of money was unauthorized and unlawful; and, in our judgment, there was no error in the court so holding.

The city had licensed this plaintiff to carry on his occupation, by a written license which conferred upon him that authority and that permission, during the year following the issuing of the license. The money exacted for the issuance of each one of these permits was, as is apparent, far in excess of any expense attending upon the issue of the permits—the permits themselves being evidenced by small pieces of paper which were attached to the bill of exceptions—of about the size of an ordinary check. The money arising in this way was turned into the general fund of the city and credited to the sanitary fund. It was a means of raising revenue for the city.

This was an attempt on the part of the board of health to exercise the power of taxation by imposing a burden, in the nature of a tax, upon the plaintiff, as a prerequisite to following his occupation, and went beyond the powers conferred upon them by law. This question was discussed by the Supreme Court, Mays v. Cincinnati, 1 Ohio St., 269, in a decision by Judge Ranney. I read from page 273:

"The power to tax is one of the highest attributes of sovereignty. It involves the right to take the private property of the citizen without his consent, and without other compensation than the promotion of the public good. Such interference with the natural right of acquisition and enjoyment guaranteed by the constitution can only be justified when public necessity clearly demands it. Being a sovereign power, it can only be exercised by the general assembly, when delegated by the people in the fundamental law; much less can it be exercised by a municipal corporation without a further unequivocal delegation by the legislative body. * * *

"A license may include a tax or it may not. If the exaction goes no further than to cover the necessary expenses of issuing it, it does not; but if it is made a means of supplying money for the public treasury, we agree with the court in State v. Roberts, 11 Gill & Johns., 506, that it 'is a tax, is too palpable for discussion.'" This case was explained and qualified to some extent by the decision in Baker v. Cincinnati, 11 Ohio St., 534.

But, it is not necessary to determine whether these fees and these exactions should be called a "tax." It was clearly an attempt on the part of the board of health to exercise the power of taxation. But, in any event, we are of the opinion that the resolutions imposing these fees were so clearly unreasonable, that they should be held invalid. Under them nearly $500.00 was exacted of Buechele in a period of three years and one month, in addition to his license fees.

But, it is insisted that the payment of them was voluntary, and that, therefore, they cannot be recovered back by the plaintiff. The evidence, as disclosed by the record, is a little conflicting, and yet not very, upon this question. The plaintiff testifies that from the beginning he objected to the payment for these permits. He says that he protested to the president of the board of health repeatedly, and that he objected so strenuously that on one or two occasions he was thrown out of the office of the board of health. Another witness testified that he was present on one occasion when the plaintiff was told that if he did not pay these fees his license would be taken away from him. He was told on other occasions that if he did not pay he would not be permitted to carry on his occupation and that he would be arrested. We do not think it was necessary for him to protest at the time of the payment of each fee of twenty-five cents or fifty cents.

The law governing this subject of voluntary payment to an officer, is stated very succinctly and well in Swan's Treatise, page 622 of the tenth edition, where it is said:

"So, also, money will be deemed to be paid involuntarily, and may be recovered back, where the position or interests of the party paying it were such as to require from another the performance of a duty enjoined by law, and the party paying it was illegally compelled to pay the money to induce the other to perform such duty for him. Thus, if A is engaged in a business requiring a license, and the officer authorized to grant such license will not do so without the payment of an illegal amount, A may recover back the illegal exaction."

The case of Stephen, Treasurer, v. Daniels, et al., 27 Ohio St., 527, I will also cite, reading from page 539 of the opinion, where the court quote from Smith's Leading Cases, with approval, as follows:

"Indeed the distinction is plain to common sense between the case of money paid upon a claim made by a public officer, who is judge in his own case, and has the power of withholding, by his own mere motion, the ordinary rights of the subject from the adverse party, till his demand is complied with; and money paid under a claim made by a private individual, who has no power of enforcing it. In the former case it is obviously *contra æquum et bonum*, that the public officer should retain what he has thus acquired by taking an undue advantage of his situation."

The court say, on the same page:

"In Steele v. Williams, 8 Exch., 624, it was held that money paid under an illegal demand, *colore officii* can never be voluntary."

In our judgment, these payments were not made voluntarily by this plaintiff; they were not such voluntary payments as preclude him from recovering them. He had procured from the city his license to carry on this occupation. He had paid therefor a license fee of ten dollars. He was notified when he went to the health office to procure his permits —which he was required to do by ordinance—that unless he paid these fees he would be prevented from carrying on his business, would be arrested and his license taken away from him, according to the testimony as offered by the plaintiff; and there was no error in the court holding that payments made under these circumstances by the plaintiff were not voluntary.

It is further contended by counsel for the city, that if this is a tax, then the claim of plaintiff is barred by the statute of limitations relating to taxes, sec. 5848, Rev. Stat., which provides:

"Courts of common pleas and superior courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof, but no recovery· shall be had unless the action be brought within one year after the taxes or assessments are collected."

Now, as I have said, this action of the board of health was perhaps an attempt to exercise the power of taxation, and the exaction of these fees for the purpose of raising revenue and turning them into the general fund was of the nature of taxation, and yet, in our judgment, it was not such an exaction as comes under the general head of taxation. We think that this statute refers to such taxes as are levied by the authorities and such assessments as are made by the authorities in the ordinary way, and that it is not intended to cover such a case as this one; and we hold that this in truth was an exaction from this plaintiff after he had procured his license, illegally, of these various sums of money as a prerequisite to the issuing of these permits, and that his action is not barred and does not come within sec. 5848, Rev. Stat.

We, therefore, find no error in the record, but are of the opinion that the court of common pleas was warranted in coming to the conclusion it did and rendering judgment in favor of the plaintiff.

The judgment of the court of common pleas will, therefore, be · affirmed, at the cost of the plaintiff in error.

*M. R. Brailey*, for plaintiff in error.

*E. P. Raymond* and *J. S. Wertman*, for defendant in error.